| | |
|---|---|
| DISTRICT COURT, DENVER COUNTY, COLORADO<br><br>City and County Building<br>1437 Bannock Street<br>Denver, CO 80202 | DATE FILED: June 13, 2024 11:16 AM<br>FILING ID: 786D5DFDADDA9<br>CASE NUMBER: 2024CV31800 |
| Plaintiffs:   Master E.F.R.; and<br>           Teresita Rodriguez-Martinez (Guardian)<br><br>v.<br><br>Defendants:   Denver Public School District, Kindra Christine Youngblood, Barb Flores, Kristi Posely, Tiffany Almon. | ▲COURT USE ONLY▲ |
| Attorneys for Plaintiffs<br>Attorney:   Wade Zobel #46615<br>Firm:        Zobel Legal Group, PC<br>Address:    2460 West 26th Ave. Suite# C-190<br>            Denver, CO 80211<br>Telephone:   720-434-6674<br>Fax:         720-222-5827<br>Email:       Zobelw@zobellegalgroup.com<br><br>Attorney:   Adam Parkes #39832<br>Firm:        Bilingual Law Denver, LLC<br>Address:    909 South Pearl Street<br>            Denver, CO 80209<br>Telephone:   303-517-5221<br>Email:       Aparkes07@gmail.com | Case Number:<br><br>Division/Ctrm: |
| **COMPLAINT** | |

Plaintiffs, Master E.F.R (hereafter "E.F.R."), and his mother and guardian Teresita Rodriguez-Martinez (here in after "Plaintiffs"), and by and through their attorneys, Zobel Legal Group PC and Bilingual Law Denver LLC, for his Complaint for damages, state and allege as follows:

### I.   PARTIES JURISDICTION AND VENUE

1. Plaintiffs, E.F.R., and his mother and guardian Teresita Rodriguez-Martinez, are individuals that live in Denver County, Colorado, and E.F.R. attended school in the Denver Public School District in 2022.

**EXHIBIT A**

2. Defendants are the Denver Public School District (hereafter "DPS"), Kindra Christine Youngblood, Barb Flores, Kristi Posely, Principal Tiffany Almon.

3. All actions in question occurred in Denver County, Colorado.

4. Jurisdiction and Venue are proper in Denver District Court.

## II.   FACTS – GENERAL ALLEGATIONS

5. E.F.R. and his guardian mother are the victims in this case.

6. E.F.R. is a minor.

7. E.F.R. lives in a Spanish speaking household.

8. E.F.R.'s family communicates with him in Spanish.

9. E.F.R. speaks limited English.

10. E.F.R. is apparently disabled.

11. E.F.R. must use an Alternative Augmentative Communication Device (AACD) to supplement his verbal communicate between English and Spanish language.

12. E.F.R. has multiple disabilities including Down syndrome.

13. E.F.R. qualifies as a Special Needs Student.

14. E.F.R. is a registered Special Needs Student with DPS.

15. E.F.R. is in the Multi-Intensive Severe Program within DPS.

16. Special Needs Students within DPS are given an "Individualized Education Program" (hereafter "IEP").

17. IEPs detail specific requirements unique to each Special Needs Student.

18. E.F.R was given an IEP by DPS.

19. DPS completed E.F.R.'s IEP Reevaluation meeting on January 27, 2022.

20. DSP completed E.F.R.'s IEP Evaluation Summary on February 28, 2022.

21. E.F.R.'s IEP stated he is a student with "significant intellectual and communication deficits."

22. E.F.R.'s IEP stated the following: "because [E.F.R] has a tendency to take off running, he needs to be watched and monitored at all times."

23. It is the responsibility of the DPS and their staff to implement and follow the IEP's of their students.

24. On or about August 29, 2022, E.F.R. was a student at John F. Kennedy "JFK" High School.

25. JFK high school is located at 2855 South Lamar Street in Denver.

26. JFK is part of DPS.

27. On or about August 29, 2022, E.F.R. was at school at JFK and under the supervision of Kindra Youngblood, Barb Flores, and Kristi Posely.

28. Kindra Youngblood, Barb Flores, Kristi Posely were familiar with E.F.R.'s IEP, and the requirements for his care outlined within his IEP.

29. Ms. Youngblood, while licensed, does not have a Spanish language credential.

30. On August 29, 2022, Ms. Youngblood told Ms. Flores, and Ms. Posely that she would get E.F.R. down to the bus, and they could take the other children from the class, leaving her alone with E.F.R.

31. Ms. Youngblood took the sole responsibility for E.F.R. by sending the paraprofessionals with the other children and staying with E.F.R. alone.

32. E.F.R was in the custody of Ms. Youngblood and DPS on August 29, 2022.

33. On August 29, 2022, while in Ms. Youngbloods custody, E.F.R was left alone in a classroom.

34. Being left alone is in violation of E.F.R.'s IEP.

35. On August 29, 2022, Ms. Youngblood turned off the lights, closed the doors, and left him alone in the classroom unsupervised.

36. On August 29, 2022, Ms. Youngblood deliberately turned off the lights, closed the doors, and left him alone in the classroom unsupervised.

37. Ms. Youngblood left E.F.R. alone enclosed in the classroom for roughly ninety (90) seconds.

**EXHIBIT A**

38. Turning off the lights, closing the doors, and leaving E.F.R. alone, restrained E.F.R. in the classroom.
39. Ms. Youngblood created a danger to E.F.R. with her actions.

40. On August 29, 2022, while closed in classroom 201, by himself with the lights off, E.F.R. fell out of a window.

41. Classroom 201 was used by Special Needs Students.

42. The window in Classroom 201 was large enough for a 15-year-old boy to fit out.

43. The window in Classroom 201 was on the second story of the school.

44. The window in Classroom 201 had no barriers or bars preventing egress.

45. The window in Classroom 201 had a washer/dryer placed next to it.

46. The window created a known danger to students given its height, size, lack of barriers, adjacent location of washer/dyer, and easy access by Special Needs Students.

47. This fall caused severe bodily injury to E.F.R.

48. These injuries occurred while E.F.R. was in the custody of DPS and Ms. Youngblood.

49. E.F.R. was transported from JFK high school to Swedish Hospital by ambulance after his fall.

50. On August 29, 2022, Denver Police were never called in to investigate the fall.

51. There was no report or complaint of this incident to the county department, local law enforcement, nor the child abuse hotline on August 29, 2022.

52. The incident was reported by Lynn Malie, a prior teacher of E.F.R. from Doull Elementary School, on August 31, 2022.

53. Kindra Youngblood, Barb Flores, Kristi Posely, and Tiffany Almon are all mandatory reporters under CRS § 19-3-304.

54. CRS § 19-3-304 requires that incidents of neglect immediately be reported for investigation.

55. No mandatory reporter with DPS reported the incident.

56. After Lynn Malie filed her complaint, Denver Police Department investigated the incident.

**EXHIBIT A**

57. On August 31, 2022, investigators contact Principle Almon at JFK High School.

58. On August 31, 2022, Principle Almon refused to give investigators a statement until speaking with legal counsel.

59. Principal Almon's legal counsel told her not to share any facts with E.F.R.'s family.

60. DPS told Principal Almon not to share any facts with E.F.R.'s Family.

### III.   STATE LAW CLAIMS

### FIRST CLAIM FOR RELIEF
*(Premises Liability)*

61. Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 60 above.

62. E.F.R. was able to get out a second story window and fall.

63. The DPS district has a duty to all of its students, including the Multi-Intensive Severe Special Needs Group, to provide a premises free of unreasonable risks to health and safety of all of its students.

64. It was foreseeable that Special Needs Students could be put at danger by the window.

65. The windows in classroom 201 at JFK high School, which allow egress, constitute an unreasonable risk to the safety of the students.

66. DPS should have known of the risk the window posed to the Special Needs Students in its care.

67. As a direct and proximate result of DPS's act or omission on the occasion in question, E.F.R. and/or his mother incurred substantial, serious, physical and emotional injuries including, but not limited to, physical injuries, past, present and future physical pain and suffering, severe mental anguish, loss of the value of his time and loss of enjoyment of life.  Accordingly, Plaintiffs seek general and special damages from DPS as a consequence of the injuries and damages suffered as a result of their acts or omissions on the occasion in question.

68. As a further direct and proximate result of the acts or omission of DPS on the occasion in question, E.F.R. and/or his mother incurred medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses.  Plaintiffs' economic damages are still accruing, and he will continue to incur medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and

expenses far into the future; if not for the balance of his natural life.  Accordingly, Plaintiffs seek economic damages from DPS, both past and future, in an amount to be itemized at trial.

## SECOND CLAIM FOR RELEIF
*(False Imprisonment)*

69. Plaintiffs incorporate by reference the allegations and facts set forth in paragraphs 1 through 60 above.

70. Defendants intended to restrict the E.F.R.'s freedom of movement with the deliberate actions.

71. E.F.R. did have his freedom of movement restricted as a result of Youngblood's deliberate actions.

72. As a direct and proximate result of E.F.R. being falsely imprisoned by DPS and Ms. Youngblood on the occasion in question, E.F.R. and/or his mother, incurred substantial, serious, physical and emotional injuries including, but not limited to, physical injuries, past, present and future physical pain and suffering, severe mental anguish, loss of the value of his time and loss of enjoyment of life.  Accordingly, Plaintiffs seek general and special damages from Defendants as a consequence of the injuries and damages suffered as a result of Defendants' conduct on the occasion in question.

73. As a further direct and proximate result of E.F.R. being falsely imprisoned by Defendants DPS and Ms. Youngblood on the occasion in question, E.F.R. and/or his mother incurred medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses.  Plaintiffs' economic damages are still accruing, and he will continue to incur medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses far into the future; if not for the balance of his natural life.  Accordingly, Plaintiffs seek economic damages from Defendants, both past and future, in an amount to be itemized at trial.

## THIRD CLAIM FOR RELIEF
*(Unlawful Seclusion/Retainer)*

74. Plaintiffs incorporate by reference the allegations and facts set forth in paragraphs 1 through 60 above.

75. E.F.R. was placed alone in a classroom where he felt he could not leave.

76. DPS and Ms. Youngblood's actions were in violation of CRS § 26-20-101 et seq. (Protection of Individuals from Restraint and Seclusion Act.)

77. As a direct and proximate result of E.F.R. being unlawfully secluded/retained by Defendants DPS and Ms. Youngblood on the occasion in question, E.F.R. and/or his mother incurred substantial, serious, physical and emotional injuries including, but not limited to, physical injuries, past, present and future physical pain and suffering, severe mental anguish, loss of the value of his time and loss of enjoyment of life. Accordingly, Plaintiffs seek general and special damages from Defendants as a consequence of the injuries and damages suffered as a result of Defendants' conduct on the occasion in question.

78. As a further direct and proximate result of E.F.R. being unlawfully secluded/retained by Defendants DPS and Ms. Youngblood on the occasion in question, E.F.R. and/or his mother incurred medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses. Plaintiffs' economic damages are still accruing, and he will continue to incur medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses far into the future; if not for the balance of his natural life. Accordingly, Plaintiffs seek economic damages from Defendants, both past and future, in an amount to be itemized at trial.

## FOUTH CLAIM FOR RELIEF
*(Failure to Report/Abdication of Duty by any and all Mandatory Reporters)*

79. Plaintiffs incorporate by reference the allegations and facts set forth in paragraphs 1 through 60, above.

80. The mandatory reporter provision states that any mandatory reporter "shall *immediately* . . . report or cause a report to be made." § 19-3-304(1)(a) (emphasis added). The plain meaning of that phrase is that, as soon as a mandatory reporter has reasonable cause to know of or suspect child abuse or neglect, the reporter must immediately report that knowledge. *But see Gonzales v. County Court of Arapahoe*, 2020 COA 104, ¶ 5 (stating that the plain language of § 19-3-304(1)(a) does not "unambiguously [or] inexorably" compel this conclusion). And the offense of failure to report is completed as soon as a reporter fails to report that information.

81. As a direct and proximate result Defendants failure to report on the occasion in question, E.F.R. and/or his mother incurred substantial, serious, physical and emotional injuries including, but not limited to, physical injuries, past, present and future physical pain and suffering, severe mental anguish, loss of the value of his time and loss of enjoyment of life. Accordingly, Plaintiffs seek general and special damages from Defendants as a consequence of the injuries and damages suffered as a result of Defendants' conduct on the occasion in question.

82. As a further direct and proximate result of Defendants failure to report on the occasion in question, E.F.R. and/or his mother incurred medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses. Plaintiffs' economic damages are still accruing, and he will continue to incur medical bills, physician

**EXHIBIT A**

bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses far into the future; if not for the balance of his natural life. Accordingly, Plaintiffs seek economic damages from Defendants, both past and future, in an amount to be itemized at trial.

## IV.   CONSTITUIONAL CLAIMS

### FIFTH CLAIM FOR RELIEF
### DEPRIVATION OF SUBSTANTIVE DUE PROCESS RIGHTS
### (STATE CREATED DANGER)
*(42 U.S.C. § 1983)*

83. Plaintiffs incorporate by reference the allegations and facts set forth in paragraphs 1 through 60, above.

84. 42 U.S.C. §1983 protects E.F.R. from substantive due process violations, arising from State Created Dangers.

85. DPS and Ms. Youngblood created or increased a danger to E.F.R. in violation of his substantive due process rights.

86. E.F.R. has Down syndrome, legally defined as being Special Needs Student, and within the Multi-Intensive Severe classification.

87. The risk of leaving E.F.R. unattended was known and published in his IEP.

88. The deliberate act of leaving a Special Needs Student in a classroom alone consciously disregarded the known risks.

89. The deliberate and willful acts of turning out the lights and shutting E.F.R. in the classroom shocks the conscious, given he is part of a defined vulnerable group.

90. As a direct and proximate result of DPS and Ms. Youngblood's deprivation of substantive due process rights on the occasion in question, E.F.R. and/or his mother incurred substantial, serious, physical and emotional injuries including, but not limited to, physical injuries, past, present and future physical pain and suffering, severe mental anguish, loss of the value of his time and loss of enjoyment of life. Accordingly, Plaintiffs seek general and special damages from Defendants as a consequence of the injuries and damages suffered as a result of Defendants' conduct on the occasion in question.

91. As a further direct and proximate result of DPS and Ms. Youngblood's deprivation of substantive due process rights on the occasion in question, E.F.R. and/or his mother incurred medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses. Plaintiffs' economic damages are still accruing,

**EXHIBIT A**

and he will continue to incur medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses far into the future; if not for the balance of his natural life. Accordingly, Plaintiffs seek economic damages from Defendants, both past and future, in an amount to be itemized at trial.

### SIXTH CLAIM FOR RELIEF
### DEPRIVATION OF SUBSTANTIVE DUE PROCESS RIGHTS
### (SPECIAL RELATIONSHIP)
*(42 U.S.C. § 1983)*

92. E.F.R. incorporates by reference the allegations and facts set forth in paragraphs 1 through 60, above.

93. 42 U.S.C. §1983 protects E.F.R. from substantive due process violation, arising from a Special Relationship DPS and Ms. Youngblood established with E.F.R.

94. The deliberate acts of leaving E.F.R. in the room alone, closing the door, and turning out the lights was an involuntary restraint of E.F.R. by a state actor.

95. E.F.R. has Down syndrome, legally defined as being Special Needs, and within the Multi-Intensive Severe classification.

96. E.F.R.'s IEP established the parameters of Defendants' obligations to him.

97. The risk of leaving E.F.R. unattended was known and published in his IEP.

98. E.F.R. was in the custody of DPS at the time of the fall.

99. E.F.R.'s IEP and E.F.R.'s apparent disability, required DPS to supervise and protect the minor while in their custody.

100. As a direct and proximate result of Defendant's deprivation of substantive due process rights on the occasion in question, E.F.R. and/or his mother incurred substantial, serious, physical and emotional injuries including, but not limited to, physical injuries, past, present and future physical pain and suffering, severe mental anguish, loss of the value of his time and loss of enjoyment of life. Accordingly, Plaintiffs seek general and special damages from Defendants as a consequence of the injuries and damages suffered as a result of Defendants' conduct on the occasion in question.

101. As a further direct and proximate result of defendant's deprivation of substantive due process rights on the occasion in question, E.F.R. and/or his mother incurred medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses. Plaintiffs' economic damages are still accruing, and he will continue to incur medical bills, physician bills, rehabilitation and therapy bills, medication expenses and other special damages and expenses far into the future; if not for the balance

of his natural life.  Accordingly, Plaintiffs seek economic damages from Defendants, both past and future, in an amount to be itemized at trial.

WHEREFORE, Plaintiffs respectfully requests that this Court enter judgment in their favor and against Defendants for actual damages in an amount to be determined at the time of trial, pre-judgment interest from the date of the accident, post-judgment interest, costs, expert witness fees, and for such other and further relief as this Court deems proper.

### PLAINTIFFS REQUEST TRIAL OF ALL MATTERS AT ISSUE HEREIN TO A JURY

Respectfully submitted June 13, 2024.

*Attorneys for Plaintiffs:*

| | |
|---|---|
| Zobel Legal Group, P.C. | Bilingual Law Denver, LLC |
| By: *Wade G. Zobel* | By: *Adam D. Parkes* |
| Wade G. Zobel, #46615 | Adam D. Parkes, #39832 |

**Plaintiffs' Address:**
**2133 South Eaton Street #7**
**Denver, CO 80227**

*In accordance with C.R.C.P. 121, §1-26(9), a printed copy of this document with original signatures is being maintained by the filing party and will be made available for inspection by other parties or the Court upon request.*

**EXHIBIT A**